SCHAFF v. COMBS. (No. 1775.)

(Court of Civil Appeals of Texas. Texarkana. May 3, 1917.)

RAILROADS ⬅278(1) — CONTRIBUTORY NEGLIGENCE—ACCIDENT NEAR STATION.

Where plaintiff attempted to cross defendant's railroad tracks near a station about midnight in front of an approaching freight train, but tripped when nearly across, he was guilty of contributory negligence as a matter of law.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

although he supposed the train was a passenger train which would slow up and he might have crossed in safety had he not tripped over spike left projecting by defendant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 891–894.]

Appeal from District Court, Hopkins County; Wm. Pierson, Judge.

Action by W. T. Combs against C. E. Schaff, receiver. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Appellant's tracks at Como ran east and west. Its depot was on the south side of the tracks, and about 200 feet east of Main street, which ran north across the tracks. At about 12 o'clock of the night of October 27, 1915, appellee, having purchased a ticket entitling him to be transported to Winnsboro on one of appellant's passenger trains then about due, was at its depot in Como. Desiring a drink of water, he went from the depot to a well on the north side of the tracks. While at the well he heard a train whistle, and immediately left the well, walking toward the depot, along the sidewalk on the west side of Main street. While so walking he saw a freight train (which he, however, at the time believed to be the passenger train he expected to take) approaching the depot from the west. When he reached the point where the street crossed over appellant's right of way and tracks, he undertook to cross "angling" from the west side of Main street over it and the tracks crossing it to the east side of the street. Walking rapidly, or trotting, he had crossed over a side track, when, stepping over the north rail of the main line track, his foot struck "something" which caused it to turn, throwing him forward to the ground. Before he got entirely clear of the track, the train passed, some part of it striking and mashing toes of his left foot so that a part of one of them had to be amputated. Appellee did not know what it was his foot struck, or that he stepped upon, that caused him to fall; but he said "it seemed to be stationary" and was situated near the east edge of the street and on the south side of, and 12 or 18 inches from, the north rail of appellant's main line track. He knew, he said, that his foot did not strike the rail as he stepped over it. His witness Carroll testified that before the time of the accident he noticed an iron spike which had been driven into a tie projecting upward about 3 inches above the ground at a point 4 or 5 inches south of the north rail of the main line track, and 4 or 5 feet east of the east edge of the street. Carroll further testified that several days after the accident he again noticed the spike, and that it "looked like it had been creened south some—bent a little." In his petition appellee alleged that appellant was guilty of negligence in leaving the spike projecting above the ground as it did, and that the spike was the thing he stepped upon which caused him to fall. He further alleged as negligence on the part of appellant that at the time of the

accident it was operating the train at a rate of speed prohibited by an ordinance of the town of Como, but he offered no evidence in support of the allegation. Appellant's answer consisted of a general demurrer, general denial, and pleas of contributory negligence on the part of appellee. The appeal is from a judgment in favor of the latter for $1,500.

Dinsmore, McMahan & Dinsmore, of Greenville, and Chas. C. Huff, of Dallas, for appellant. C. E. Sheppard and H. E. Pharr, both of Sulphur Springs, for appellee.

WILLSON, C. J. (after stating the facts as above). "Ordinarily," said the Supreme Court in Sanches v. Railway Co., 88 Tex. 117, 30 S. W. 431, "negligence is a fact to be found or inferred from the testimony; but, where from the testimony on the issue of negligence no inference but negligence can be drawn, it becomes a question of law, and the court may instruct the jury that negligence has been established." Appellant insists, and we agree, that the facts of this case brought it within the exception to the general rule recognized in the Sanches Case, in that no other inference than one of negligence on the part of appellee reasonably could be drawn from the testimony; and further insists, and we agree, that the trial court therefore erred when he refused to instruct the jury to find in its favor, on the ground that it appeared that appellee was guilty of contributory negligence barring a right he otherwise might have had to recover of appellant damages on account of the injury he suffered. It seems from the testimony that appellee was at a point only 30 or 40 feet from the edge of appellant's right of way when he saw the train approaching. He was then walking rapidly toward the crossing. "Seeing the train was coming in and getting intolerably close," he said, "I peartened up. I don't know whether I was walking fast or trotting across to get across the track." The only excuse he gave for his reckless act in attempting to cross in front of it as he did was that he thought the train was "slowing down" as it approached the crossing. His testimony indicates he so thought because he assumed the train was the passenger train, which, he said, customarily "slowed down" by the time the engine got to the crossing. "I reckon," he said, "it was imagination with me, thinking it was a passenger train, that I thought the train was pulling down." Notwithstanding appellee thought the train was "slowing down," his testimony clearly indicates he also thought it nevertheless was moving at such a rate of speed as to require him to race with it if he beat it to the point where he expected to cross the track in time to cross safely over same. That he beat it to the point by a very narrow margin is indicated by testimony showing that when, falling, he "pitched forward

and fell right across the track," some part of the train struck and mashed toes of one of his feet. We do not think there was ground for disagreement between reasonable minds as to the nature of his act. It was plainly hazardous to attempt as he did to cross in front of a moving locomotive as close as the testimony indicates the one in question must have been to him, and an act that an ordinarily prudent person under the circumstances shown by the testimony would not have been guilty of. Railway Co. v. Abendroth, 55 S. W. 1122; 3 Elliott on Railroads, § 1168.

"The general rule," says Mr. Elliott, "is that it is negligence for a traveler to attempt to cross closely in front of an engine or train which he sees or knows is approaching the crossing, for a person who knows of danger is under an obligation to refrain from incurring it and endeavoring to avoid it upon a calculation of chance. Where a train is at such a distance as that an ordinarily prudent man would, without hesitation, attempt to cross the track, it may be that there is no negligence. But where an attempt to cross in front of an approaching train is voluntarily made upon a nice calculation of chances, the person making the attempt will be regarded as negligent if he undertakes to proceed upon the assumption that he has correctly calculated the chances of crossing in safety and is thereby injured."

That appellee would have won in the race he ran with the train, and have gotten safely across the track, as he testified he would, but for negligence on the part of appellant in leaving the spike projecting up from the crossing, causing him to fall, we think is of no importance in determining the nature of his act. The attempt to cross as he did would have been a perilous one had there been no obstruction of any kind on the crossing, and the fact that he might have succeeded in crossing without hurt to himself had he not fallen would not render his attempt less hazardous, viewed as it should be from his standpoint at the time he acted.

The judgment will be reversed, and judgment will be here rendered that appellee take nothing by his suit against appellant.